In September of 1972, Richard A. Ryan was driving a 1964 Plymouth automobile owned by his father, Athel W. Ryan, which collided with an automobile owned and operated by Oscar Hubert Campbell. Campbell was seriously injured and recovered a $32,500 judgment against Richard A. Ryan.
At the time of the accident Athel W. Ryan owned two automobiles, both insured with State Farm. One policy covered a 1972 Pontiac automobile and the other covered the 1964 Plymouth being driven by his son, Richard, at the time of the accident. The 1972 Pontiac was used predominantly by young Ryan, but it was at a local automobile dealership undergoing repairs at the time of the accident. The 1964 Plymouth was being used by young Ryan with his father's permission while the Pontiac was being repaired. Richard Ryan was a resident of Athel W. Ryan's household at the time of the accident and, therefore, was an insured under both State Farm policies.
State Farm paid Campbell $10,800, the maximum limit afforded under the policy covering the Plymouth. Campbell initiated this lawsuit seeking to collect the remainder of the judgment from the proceeds of State Farm's policy covering the 1972 Pontiac contending that he was entitled to the benefits under that policy because, at the time of the accident, Richard Ryan was using the Plymouth as a temporary substitute automobile for the Pontiac.
The trial court entered judgment in favor of State Farm and Campbell appealed.
The trial court determined that State Farm was not liable to Campbell under the provisions of the policy covering the 1972 Pontiac, in that the 1964 Plymouth was not a temporary substitute automobile as defined in that policy. The pertinent provisions of the policy covering the 1972 Pontiac are:
"DEFINITIONS . . .
". . .
 "Owned Motor Vehicle — means the motor vehicle . . . described in the declarations, and includes a temporary substitute automobile, a newly acquired automobile, and, provided the described motor vehicle is not classified as `commercial', under coverages A.B.C. and M, a trailer (as defined herein) or a detachable living quarters unit owned by the named insured or his spouse, if a resident of the same household.
". . .
 "Temporary Substitute Automobile — means an automobile not owned by the named insured or his spouse while temporarily used with the permission of the owner as a substitute for the described motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."
The words italicized are italicized in the policy.
Campbell contends that these two definitions create an ambiguity which must be resolved in favor of the insured, and against State Farm. State Farm denies that there is any ambiguity and contends that the Plymouth was not a temporary substitute automobile, because, as that term is defined *Page 914 
in the policy, it means an automobile not owned by the named insured.
The basic question is whether an automobile owned by the named insured qualifies, under the terms of the policy, as a temporary substitute automobile. Couch, in his treatise, says:
 "By express provision or construction, an automobile owned by the insured cannot qualify as a substitute automobile . . . even though the insured uses it in place of his other automobile, which is temporarily withdrawn from normal use. That is, a temporary substitution of vehicles clause applies to a nonowned vehicle and not to the substitution in the policy of another vehicle owned by the insured." Couch on Insurance 2d (1964), § 45:235.
We agree with this statement unless some other provision of the policy conflicts with the definition of "temporary substitute automobile" and thereby creates an ambiguity, which would require resolution in favor of the insured. SafecoInsurance Company of America v. Banks, 275 Ala. 119,152 So.2d 666 (1963). The policy involved in Safeco carried definitions of "owned automobile" and "temporary substitute automobile" as follows:
 "(1) `"owned automobile"' means the described private passenger or utility automobile owned by the named insured, and includes a temporary substitute
automobile and any trailer owned by the named insured; [Emphasis supplied]
 "(2) `"temporary substitute automobile"' means any automobile or trailer not owned by the named insured while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; [Emphasis supplied]" 275 Ala. at 121, 152 So.2d at 669.
Sims, the insured, at the time of the accident, was driving a Chrysler automobile owned by him, but normally used by his wife, as a substitute for the Ford automobile described in the policy, which was undergoing repair. This court held that the definition of "owned automobile" included the Chrysler, a temporary substitute automobile owned by the insured. The court found that it was not the intention of the insurance company ". . . to exclude the Chrysler automobile of Sims from coverage while it was being used as a temporary substitute for the Ford automobile regularly used by Sims but under repair during the use of the Chrysler." 275 Ala. at 122, 152 So.2d at 670.
In the instant case, Campbell argues that Safeco is controlling. State Farm insists that it is not because the definition of "owned motor vehicle" in the policy involved here differs from the Safeco definition. The Safeco decision resulted from the court's reading the definition of "owned automobile" to include a temporary substitute automobile owned
by the insured. It rejected Safeco's argument that the word "owned" in the last line of that definition referred only to "any trailer" owned by the named insured. State Farm asserts that the word "owned" as used in the definition of "owned motor vehicle" in the instant policy modifies "trailer" and "a detachable living quarters unit." Rules of English grammar will not permit us to hold that "owned" modifies temporary substitute automobile.
It seems quite clear that the reference to temporary substitute automobile, italicized as were other terms in the definition, was intended to carry the meaning given that term in the definition section of the policy. A "temporary substitute automobile" is specifically defined as one not owned
by the named insured.
The policy provisions in this case are more similar to the provisions involved in Mattox v. Pennsylvania Threshermen Farmers' Mutual Casualty Ins. Co., 276 Ala. 172, 160 So.2d 458
(1964), than they are to the Safeco policy. In Mattox, we held that an automobile owned by the named insured did not qualify as a temporary substitute automobile, which, as is the case here, was defined in the policy as one not owned by the named insured. *Page 915 
The trial court correctly concluded that State Farm was not liable to Campbell under the policy covering the 1972 Pontiac.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER and BEATTY, JJ., concur.